NOTICE

Decision filed 12/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250565-U

NO. 5-25-0565

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* R.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Coles County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-JA-36 |
| | ) | |
| Jaleea G., | ) | Honorable |
| | ) | Jonathan T. Braden, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's order denying the respondent's motion to continue is affirmed.

¶ 2     The respondent, Jaleea G. (Mother), appeals the circuit court's denial of her motion to continue the hearing to terminate her parental rights. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On July 20, 2023, the State filed a petition[1] for adjudication of wardship due to allegations of neglect, pursuant to section 2-3(1)(a) and (b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(a), (b) (West 2022)). The petition claimed that R.G., a nine-month-old child, was born

---

[1]An amended petition was filed the same day to correct the spelling of Father's name.

1

prematurely, had medically complex needs, and due to his medical issues, R.G. required breathing treatments and many medical appointments. Mother failed to maintain R.G.'s medical treatments and appointments, resulting in R.G. requiring several emergency room visits. R.G. needed to be on supplemental oxygen, but Mother brought R.G. to a doctor's appointment without the oxygen because she did not believe he needed to be on it. On July 18, 2023, the Department of Children and Family Services (DCFS) performed a home visit, and the caseworkers discovered that R.G. had labored breathing. R.G. was taken in an ambulance to the hospital where he was treated. The petition further alleged that Mother was noncompliant with R.G.'s care schedule and resisted offered services from DCFS to address R.G.'s medical needs. Ra'quan Walker (Father) was aware of the circumstances and did not act to address them. As a result, Mother and Father neglected R.G. because he did not receive proper or necessary medical care in violation of section 2-3(1)(a) of the Act and his environment was injurious to his welfare in violation of section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(a), (b) (West 2022)). As Father is not a party to this appeal, the facts will be limited to Mother's involvement in the case.

¶ 5     On the same day, the circuit court held a temporary custody hearing and both parents stipulated to the facts listed in the petition. The court entered an order granting custody to the Guardianship Administrator of DCFS. The court also entered an order appointing a court-appointed special advocate (CASA) as guardian *ad litem*.

¶ 6     A status hearing was held on August 4, 2023, at which Mother admitted the facts of the petition and stipulated to the adjudication. The circuit court entered the order of adjudication on October 24, 2023.

¶ 7     A dispositional hearing was held on September 1, 2023. The circuit court considered the report filed by CASA on August 17, 2023, the report filed by DCFS on August 22, 2023, and an

integrated assessment filed by DCFS for Mother on August 29, 2023. The assessment recommended the following services for Mother: individual psychotherapy services, psychiatric services/medication, drug screenings, parenting classes, and family habilitation. The assessment also showed that Mother needed to participate in R.G.'s medical care and learn how to care for him. By agreement of the parties, the circuit court entered a dispositional order, adjudicating R.G. to be neglected, ordering visitation, and listing the services both parents needed to complete. The order also granted custody and guardianship to DCFS.

¶ 8    DCFS continued filing reports on Mother's progress for the remainder of 2023 through 2025. On March 28, 2025, the State filed a motion for termination of parental rights. The motion alleged that Mother is not a fit parent and her parental rights should be terminated for the following reasons: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare; (2) failure to make reasonable efforts to correct the conditions that were the basis for the removal of R.G. during any nine-month period following adjudication, specifically May 20, 2024, to February 20, 2025; and (3) failure to make reasonable progress toward the return of R.G. to the parent within any nine-month period following adjudication, specifically May 20, 2024, to February 20, 2025.

¶ 9    At a hearing on April 11, 2025, the circuit court presented Mother with a copy of the motion for termination of parental rights and explained the allegations against her, as well as the bifurcated hearing process. The court specifically told Mother, "You have the right to be present at your hearing, the right to see, hear, and confront any witnesses that may testify against you." Mother affirmed she understood how the fitness and best interest hearing process works. Notice was then provided in court to Mother and her attorney, setting the hearing for June 20, 2025.

3

¶ 10    On June 20, 2025, the State, Mother's counsel, CASA, and four witnesses for the State were present for the hearing. Mother failed to appear, and her counsel stated, "I tried to call her several times this week, *** but no one answered. *** [S]hort answer, I don't know where she is." Counsel made an oral motion to continue. The State and CASA asked the court to proceed with the hearing. The circuit court said:

> "I looked through the docket, she is—she is generally present. However, this is a Motion for Termination of Parental Rights. It has now been filed for nearly three months. We've had this hearing set for two months. Without any basis, or communication from [Mother] as to why she has failed to appear, I am going to deny the oral motion to continue. We're going to proceed to a hearing."

¶ 11    The State then called three caseworkers and/or specialists involved in R.G.'s case. Mother's counsel was present to cross-examine all the witnesses, and did so for two of them. The witnesses testified to Mother's involvement in this case, including disinterest during visitation, unsatisfactory improvement on her service plan tasks, such as failure to attend parenting classes, and failure to attend medical appointments with R.G. or assist with his medical care. The circuit court found Mother to be unfit on all grounds alleged in the motion and proceeded to the best interest hearing.

¶ 12    During the best interest hearing, R.G.'s foster mother, Johnna B., testified that R.G. had lived with her and her husband since September 2023. Johnna detailed R.G.'s medical challenges he faced, and that she had been involved with his medical care and treatment since he began living with her. Johnna stated she and her husband had fully incorporated R.G. into their family and were willing to adopt him. The circuit court found it to be in R.G.'s best interest to terminate Mother's

4

parental rights. Orders changing the permanency goal to adoption and terminating Mother's parental rights were entered the same day. Mother timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, Mother argues that the circuit court abused its discretion when it denied the motion for continuance of the termination hearing. She argues that the denial was unreasonable and the cause of a "palpable injustice." The State argues that the circuit court did not abuse its discretion and that Mother failed to argue how she was prejudiced by her failure to appear. We agree.

¶ 15    We review the denial of a motion to continue for an abuse of discretion. *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 927 (1997). The circuit court has broad discretion when deciding whether to grant or deny a motion to continue, but the court must not exercise that discretion arbitrarily. *Id.* "It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice." *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002). A litigant does not have an absolute right to a continuance. *Id.* The denial of a request for continuance is not grounds for reversal unless the complaining party has been prejudiced by such denial. *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999).

¶ 16    The Act states, "The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2024). In juvenile cases, the court may continue a hearing "only if the continuance is consistent with the health, safety and best interests of the minor." *Id.* § 2-14(c). The Act also states that the party should file a motion to continue no later

than 10 days prior to the hearing, or upon the court's own motion and only for good cause. *Id.* The term "good cause" as applied to the Act is strictly construed and must be in accordance with Illinois Supreme Court Rule 231(a) through (f). 705 ILCS 405/2-14(c) (West 2024); Ill. S. Ct. R. 231(a)-(f) (eff. Jan. 1, 1970).

¶ 17    In the present case, the motion to continue was not filed at least 10 days prior to the hearing as required, but instead given orally immediately prior to the hearing. 705 ILCS 405/2-14(c) (West 2024). Mother additionally does not argue that she was prejudiced by failing to attend the hearing. Mother does not argue that she was prevented from testifying or presenting evidence due to the denial of the motion, or any other good cause recognized under the Act. *Id.*; Ill. S. Ct. R. 231(a)-(f) (eff. Jan. 1, 1970).

¶ 18    While Mother's reply brief states that she "lost her parental rights to her children [*sic*] when she was not present to contest the State's evidence," the record rebuts this argument. Mother's counsel was present and available for cross-examination of the witnesses during both hearings. Counsel cross-examined three of the four witnesses that day and had the opportunity to contest any of the evidence or testimony presented. As such, Mother failed to prove that she suffered any prejudice as a result of the denial of the motion to continue.

¶ 19    In considering the motion to continue, the circuit court had to consider the health, safety, and best interests of R.G. 705 ILCS 405/2-14(c) (West 2024). R.G. had been in the care of DCFS since July 2023, nearly two years by the time of the hearing. The circuit court also considered the fact that Mother received notice of the hearing two months prior, but did not appear on the hearing date. All the witnesses for the State were present as well. For those reasons, the circuit court did not abuse its discretion in denying the motion to continue.

¶ 20    Additionally, Mother does not argue that the circuit court erred in finding her unfit or terminating her parental rights. As such, these issues are deemed waived. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited).

¶ 21                                    III. CONCLUSION

¶ 22    For the foregoing reasons, the June 20, 2025, judgment of the circuit court of Coles County that terminated Mother's parental rights to R.G. is hereby affirmed.

¶ 23    Affirmed.